IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JERRY RAY TICE,

        Plaintiff,

vs.                                        No. CIV 02-1579 BB/LFG

DIRECTOR OF PROBATION AND PAROLE
DIVISION, and KAY AUBREY,

        Defendants.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

This is a *pro se, in forma pauperis* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff Jerry Ray Tice (Tice") filed his complaint in this case on December 16, 2002. The allegations of the complaint are not entirely clear, but it appears Tice is claiming that his probation was revoked without due process, that the revocation was ultimately overturned by the New Mexico Court of Appeals, and that as a result of the faulty revocation he was held in prison illegally for five months. He seeks damages and injunctive relief.

The complaint named four defendants: the State of New Mexico, the Department of Corrections, the Director of Probation and Parole, and Probation Officer Kay Aubrey. By order dated January 21, 2003, the Court dismissed the State of New Mexico and Department of Corrections from the case [Doc. 6]. The remaining defendants filed their Answer on March 22, 2003

---

[1] Within ten (10) days after a party is served with a copy of this legal analysis and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the analysis and recommendations. If no objections are filed, no appellate review will be allowed.

and were ordered [Doc. 14] to submit a Martinez Report regarding Tice's allegations.

The parties were given notice in the Order that the Martinez Report could be used in deciding whether to grant summary judgment, and they were directed to submit any material they considered relevant to the claims in this case. The Martinez Report [Doc. 18] was filed on May 22, 2003. Tice had thirty days following submission of the report in which to file his response, but he has not done so.

Defendants submitted a number of documents in connection with the Martinez Report. They ask the Court to dismiss the case, arguing that Tice has failed to state a claim on which relief can be granted, that even if Tice has properly stated a claim they are entitled to qualified immunity and absolute judicial immunity, and finally they assert that Tice has not established nor even alleged sufficient grounds to support injunctive relief. The Court agrees with Defendants and recommends that summary judgment be entered in favor of Defendants.

## Factual Background

The documents submitted by Defendants establish the following sequence of events. In 1997, Tice pled guilty and was convicted of aggravated battery (Count 1) and aggravated burglary (Count 2) in the case of State v. Jerry Tice, Cr. 97-164 (Fifth Judicial District, Chaves County, New Mexico). [Martinez Report, Doc. 18, Ex. 21; hereinafter referred to the format "MR Ex. 21"]. The Judgment, Sentence and Commitment in that case was signed by District Judge William P. Lynch and filed October 29, 1997. [MR Ex. 18]. Judge Lynch sentenced Tice to three years on Count 1 and nine years on Count 2, the sentences to run concurrently, for a total of nine years. The Judgment also provided:

> FIVE (5) YEARS of the sentence shall be suspended if and only if the

> Defendant is accepted into and completes a TWO (2) YEAR residential treatment program, in which case he shall be placed on probation for the balance of the sentence.[2]

On March 22, 1999, the Parole Board authorized parole for Tice, effective August 6, 1999. The Certificate of Parole [MR Ex. 3] stated that Tice was to be paroled to Artesia, New Mexico, and he was ordered to report to Leann Martin of the Artesia Police Department. On May 25, 1999, Leann Martin, the Investigating Officer, sent a memorandum to the Chairman of the Parole Board. [MR Ex. 5]. In this memo, Ms. Martin approved the parole plan, but also noted as follows:

> The biggest concern to this officer is the Judgement [sic] and Sentence, which orders inmate into a two-year residential treatment program, or he has to spend his suspended sentence incarcerated. Unless the Judge removes this condition, inmate must enter such program or face revocation. It is requested that this issue be clarified prior to parole. If paroled and ordered into a two-year program it is recommended that inmate only be allowed 30 to 60 days to find such a program and enter into it.

On May 28, 1999, Tice filed a *pro se* motion to amend the Judgment, Sentence and Commitment [MR Ex. 20]. In this motion, Tice stated that he had made "a sincere effort to find a treatment program" as required in the Second Amended Judgment, but that he had been unable to do so because most programs will not accept persons such as Tice who are taking antidepressants and mood stabilizers, and the Department of Corrections failed to assist him in finding a program, failed to allow him "proper preparations for establishing an acceptable parole plan," and inhibited his efforts to find a treatment program. He asked the court to allow him to be released so that he could fulfill the conditions of his parole by locating, entering and completing a treatment program. The

---

[2]The Judgment and Sentence was amended twice, but the language remained the same regarding suspension of the sentence and release on probation on condition that Tice find and complete a two-year treatment program. [*See*, Second Amended Judgment, MR Ex. 2].

motion was denied. [MR Ex. 21].

On June 18, 1999, Tice filed an Amended Motion to Amend Judgment and Sentence [MR Ex. 17], stating he had been accepted into three separate programs, pending personal interview, but that the Department of Corrections would not allow him a furlough for these interviews, nor would they allow him to be paroled, because of the way the Judgment and Sentence was worded. This motion was also denied. [MR Ex. 21].

In July and August, 1999, Tice's Probation Officer, Defendant Kay Aubrey ["Aubrey"][3], made a series of case notes about Tice's upcoming release. [MR Ex. 6]. She noted that she had "talked to Leann," presumably Leann Martin, who told her Tice had made no plans for a program, but "the institution is saying he has." She noted that Tice had "active city warrants," and that he would therefore be arrested when he reported in after his release. Aubrey further noted that she spoke with an employee in Judge Lynch's chambers, who said Tice had been submitting different program plans and requests for reconsideration of sentencing which Judge Lynch had been rejecting. Sometime later, Aubrey noted that Judge Lynch directed her to prepare a Probation Violation Report ("PVR"), and that he "wanted all info we had re: prob. planning etc. – Says this not a good thing."

Tice was released on parole August 6, 1999. Aubrey states in her case notes of August 9, 1999, that she spoke with Mary Lou Romero, who appears to have been Tice's caseworker,[4] regarding the fact that Tice was not to be paroled unless he went directly into a program. The

---

[3] Also identified in the record as "M.B. Aubrey," *see,* MR Ex. 9.

[4] "Mary Lou Romero" is not identified in Aubrey's case notes. However, Tice's Docketing Statement [MR Ex. 13], filed in connection with the appeal of his probation violation conviction, identifies his caseworker as Mary Lou Becker, and Becker's supervisor as Sue Romero. The statement of Special Conditions of Parole [MR Ex. 4] is signed by Mary Lou Becker. The Docketing Statement asserts that both Becker and Romero told Tice that he could not refuse parole.

4

caseworker told Aubrey that no program would accept Tice, but they had no choice but to "let him go."

Tice was arrested on August 8, 1999 for failure to pay fines and for probation violation, and it appears that he was released as of August 11, 1999, according to Aubrey's notes, "due to his efforts in locating a program and family's assertions they will supervise." [MR Ex. 6].  However, on August 12, 1999, Aubrey filed a Report of Probation Violation [MR Ex. 9, at 2].  Her notes indicate that she had been instructed to do so by Judge Lynch.  [*See*, MR, Ex. 9, at 1].   In this report, Aubrey recommended that a bench warrant be issued for Tice for violating conditions of his release, and that the original sentence be imposed.  She stated that, although Tice attempted to locate a residential treatment program throughout his period of incarceration, he had been unable to locate a suitable program and was therefore in violation of his conditions of release, which required that he be released directly into a two-year program in order to qualify for the five-year suspension.  Aubrey concluded that Tice "should not have been released" and his sentence should not have been suspended.

A bench warrant was issued, and Tice was again arrested on August 16, 1999. [MR Exs.6, 8, 21].  A Petition to Revoke Probation was filed on August 18, 1999.  [MR Ex. 11].  On September 7, 1999, a probation revocation hearing was held, with Tice appearing *pro se*.[5]  There is no transcript of this hearing on the record.  However, in its Memorandum in Opposition to Proposed Partial Summary Reversal, filed in connection with Tice's appeal of his probation violation conviction, the State described the testimony presented at the hearing, as taken from unofficial copies of the hearing

---

[5]Tice was initially represented by the Public Defender in the probation revocation proceedings but a potential conflict of interest arose, and Tice waived his right to counsel and continued *pro se*.

tapes. [*See*, MR Ex. 14, at 1]. Tice's attorney apparently listened to these tapes as well, as the Docketing Statement [MR Ex. 13] includes descriptions of the testimony at the hearing. The following statements about the hearing are taken from these two documents.

At the hearing, Tice testified that he had been "illegally" released due to an "administrative foul-up," the foul-up being that he was released even though he had not fulfilled the condition that he be accepted into a treatment program. Tice testified that he had contacted over thirty programs but had no success, primarily because most programs would not accept individuals on medication. He also stated that he tried to prevent his release since he had not met the necessary conditions, but that he was thwarted in this; however, he also said that he thought his release documents gave him 60 days following release within which to find a treatment program. Tice testified further that, although he had been provisionally accepted into two or three out-of-state programs, he was not allowed to travel out of state for the required interviews. [MR Ex. 13, at 3-6; MR Ex. 14, at 2-3, 11-12].

Kay Aubrey also testified at the hearing, and her testimony conflicts somewhat with Tice's. She could not confirm that Tice was in fact taking any medication, although she said Tice told her he was unable to find a program in New Mexico due to medications he was taking. He also told her he had provisionally been accepted to out-of-state programs that required a face-to-face interview, and he provided her with a list of programs that he had contacted. Aubrey said that she did not attempt to verify Tice's efforts, because 25 of the contacts Tice made in an attempt to find a treatment program had occurred more than a year earlier, and even the most recent contact was made half a year earlier. Aubrey testified further that she told Tice she could not let him go out of state to interview without prior approval of the receiving state, and that California and other states do not

allow out-of-state individuals into their programs. [MR Ex. 13, at 3; MR Ex. 14, at 2, 5].

Judge Lynch, who originally sentenced Tice, presided at the probation revocation hearing. He made the following remarks to Tice:

> I know how to put somebody in a residential treatment center under probation terms, and I did not do that in this case, and I didn't do it in this case because you're one of the more dangerous individuals I've had in my court. You almost murdered your ex-wife. I specifically wrote the judgment and sentence the way it is, which is, you aren't going anywhere except directly to an RTC. I have no clue why the Department of Corrections released you . . . There's no reason for you to be out of Department of Corrections control. I have no choice under the facts as I have them here but to remand you to the Department of Corrections. The one thing I will do is that I will continue the same operative language in effect: if you can find your way into, and complete, a two-year residential treatment program – you can go out on probation when you do that . . . I wrote this a specific way, for a specific reason.

[MR Ex. 14, at 10; *see also*, MR Ex. 13, at 4].

Following the hearing, Tice was convicted of violating his probation and was remanded to the custody of the Department of Corrections. The Order Revoking Probation, Imposition of Sentence and Commitment [MR Ex. 10] was filed on October 13, 1999. In it, Judge Lynch found that Tice violated the conditions of his probation, and he revoked the probation and the five-year suspended sentence, but he again suspended the sentence on the same condition: "if and only if the Defendant is accepted into and completes a two (2) year residential treatment program, in which case he shall be placed on probation for the balance of the sentence." Tice was allowed credit on his sentence from August 6, 1999 until August 12, 1999, and from August 16, 1999 up to the date of the order.

Tice appealed his conviction for probation violation. While the appeal was pending, in December 1999, he notified the court that he had been accepted into a residential treatment program

in Albuquerque. The court approved the plan, and Tice was released into the treatment program on January 6, 2000. [MR Ex. 13, at 4; MR Ex. 14, at 5; MR Ex. 21].

On August 7, 2000, the New Mexico Court of Appeals reversed the order revoking probation, on grounds that Tice did not receive fair warning that *immediate* entry into a rehabilitation program was a condition of his probation, and that any violation of probation was beyond Tice's control and therefore not wilful. The court also found there was insufficient evidence that Tice violated the conditions of his probation, given the lack of notice and lack of wilfulness. [MR Ex. 15]. The court stated further:

> Notwithstanding our ruling in this case, we emphasize that the second amended judgment and sentence is still in place and, under that judgment, five years of Defendant's sentence shall only be suspended if Defendant completes a two-year residential program, which he represents to us he is currently enrolled in . . . Should Defendant cease to be enrolled in a treatment program, the suspended portion of his sentence will be reinstated. The effect of our ruling, therefore, is only to erase from Defendant's record any order stating he violated the conditions of probation when those conditions were not expressly stated in the judgment, and when any violation was not wilful on his part.

[Id., at 6].

Tice never completed a two-year treatment program. On November 21, 2002, a Second Order Revoking Probation was entered [MR Exs. 19, 21]. Tice was found in violation of his conditions of probation, and he was ordered to serve the suspended portion of his sentence. Although no documentation of the reason for this second revocation appears on the record, Defendants state in the Martinez Report that Tice is now back in prison following parole revocation based on his May 15, 2002 guilty plea to five felony counts based on the kidnaping and beating of his current spouse. [MR, at 18].

8

**Discussion**

As noted above, the six counts of Tice's complaint include a variety of claims, presented as violations of various constitutional provisions. As required, the Court reads the *pro se* complaint liberally. Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Under such a reading, Tice's allegations amount to a claim that his due process rights were violated, based on the following alleged facts:   Probation Officer Aubrey refused to issue Tice a travel permit to allow him to go to California for a face-to-face interview at a treatment center there and instead petitioned the court to revoke his probation; Judge Lynch failed to "take control of the situation"; Tice was held in prison illegally for 5 months; and the Director of Probation and Parole failed to issue an appropriate "noncompetition policy." Tice seeks compensatory damages for lost wages, damages of $1,000 a day for being detained illegally, and "injunctive relief in the form of an order preventing probation and parole from acting inharmoniously."

In their Martinez Report, Defendants seek dismissal based on failure to state a claim, qualified immunity, judicial immunity, and failure to establish the requisite grounds for injunctive relief. The Court agrees that, based on the information supplied in the Martinez Report, summary judgment in favor of Defendants is appropriate.

Tice claims that he was held in prison illegally for five months. The Court does not find any basis in the record for this allegation. It is true that the New Mexico Court of Appeals overturned the order revoking probation. However, Tice's illegal release on probation did not result in any additional prison time; rather, the opposite is true in that he was released from prison for several days when he was not entitled to be out. The grounds for reversal were lack of notice and lack of volition,

rather than any defect in the way the Judgment and Sentence was framed. The court of appeals implicitly rejected Tice's assertion that he was entitled to 60 days after his release to find a program willing to accept him; indeed, the court emphasized that the original ruling was still in effect, and it required him to locate and be accepted into a two-year treatment program before he could be released. Thus, the court of appeals held that Tice's release into a treatment program was indeed a precondition of suspension and probation; this hadn't been made sufficiently clear to Tice to justify convicting him for a probation violation, but it nevertheless remained a precondition to his release.

The Court finds nothing in the record that would support a finding that Tice suffered any adverse consequences as a result of any action taken by the Defendants. Although there was clearly an "administrative foul-up" which resulted in Tice's release from prison when he should have remained incarcerated, he has not demonstrated that this caused him any harm. There is no evidence whatsoever to support his claim that he was illegally imprisoned for five months. The conviction for probation violation was reversed on appeal, so this will not constitute a blot on his record. Tice has presented nothing to support his claim that the actions of Defendants resulted in lost wages, nor that he is entitled to any damages for being "detained illegally."

His claim against Kay Aubrey for preparing and filing the Probation Revocation Report is clearly precluded by the doctrine of judicial immunity, as she took these actions at the direction of Judge Lynch. Those performing ministerial acts at the direction of a judge are entitled to absolute immunity, as the judicial process is better served by allowing correction of errors through the "ordinary mechanisms of review," rather than by exposing judicial personnel to liability. Whitesel v. Sengenberger, 222 F.3d 861, 869-70 (10th Cir. 2000).

Tice also claims that Kay Aubrey refused to allow him a travel permit to go to California for

an interview with a treatment center. However, Aubrey stated at the revocation hearing that Tice would not have been eligible for an out-of-state program, and he has not come forth with any evidence to the contrary, which is his burden on summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49, 106 S. Ct. 2505, 2510 (1986); Biester v. Midwest Health Servs., Inc., 77 F.3d 1264, 1266 (10th Cir. 1996) (once the moving party meets its burden, the party opposing the motion must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial). In any event, Tice was able eventually to find a local treatment program which met with the Court's approval, and as soon as he did, he was released under the terms of the Judgment and Sentence. Tice was not harmed by any action of Aubrey's.

Defendants also argue that, even if mistakes were made, they are entitled to qualified immunity for their actions with regard to Tice. The Court is inclined to agree but does not find it necessary to reach this issue, in light of the fact that Tice has not shown that he suffered any damage as a result of actions taken by Defendants.

Nor is Tice entitled to injunctive relief. To begin with, he has not stated precisely what actions he seeks to enjoin; at one point, Tice says it was the duty of the Director of Probation and Parole "to issue a noncompetition policy"; and in his prayer for relief, Tice asks that Probation and Parole be enjoined from "acting inharmoniously." This is not sufficient to support a request for an injunction. "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Social and Rehabilitative Serv., 31 F.3d 1536, 1543 (10th Cir. 1994) (internal punctuation omitted). A party seeking preliminary injunctive relief must show: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm in absence of an injunction; (3) proof that the threatened harm outweighs any

damage the injunction may cause to the party opposing it; and (4) that the injunction, if issued, will not be adverse to the public interest. Id., at 1542-43.

In addition, preliminary injunctive relief in civil actions brought by prison inmates must be narrowly drawn, extend no further than necessary to correct any harm found by the Court, and be the least intrusive means necessary to correct that harm. 18 U.S.C. § 3626(a)(2); Singer v. Wackenhut Corrections Corp., No. Civ. 99-1091 PK/RLP, slip op. at 5 (D. N. M. March 14, 2000). As discussed above, Tice cannot show a substantial likelihood that he will prevail on the merits and, indeed, he has failed to establish any of the other elements of a claim for injunctive relief. Furthermore, the relief he requests is not "narrowly drawn." There is no basis for issuing an injunction in this case.

Defendants have established the lack of a genuine issue of material fact on Tice's claims, and has failed to rebut this showing. Summary judgment should therefore issue in favor of the remaining Defendants.

## Recommended Disposition

That summary judgment be rendered in favor of defendants and the case be dismissed with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge